## DeWOLF v. HAYS.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CALIFORNIA.

No. 868. Submitted January 6, 1888. — Decided April 9, 1888.

Upon the proofs in this case the court finds that the settlement which the bill seeks to set aside was a prudent and fair one, made deliberately and under advice of competent counsel, and that, independently of any question of laches, no ground is shown for maintaining this suit.

The original suit was a bill in equity, filed May 7, 1884, by Florence W. Hays, the widow of John J. Hays, against Frank E. DeWolf and wife and Horace M. Barnes, to set aside a deed of real estate from DeWolf and wife to Barnes, and to compel a conveyance to the plaintiff. Upon a hearing on pleadings and proofs, the Circuit Court entered a decree for the plaintiff, and the defendants appealed to this court. The case is stated in the opinion.

*Mr. Benjamin F. Thurston* and *Mr. Louis T. Haggin* for appellants, cited on the question of laches, and the presumption of acquiescence after considerable delay: *Wollensak* v. *Reiher*, 115 U. S. 96; *Sullivan*, v. *Portland &c. Railroad*, 94 U. S. 806, 812; *Beaubien* v. *Beaubien*, 23 How. 190; *Stearns* v. *Page*, 7 How. 819; *Moore* v. *Greene*, 19 How. 69; *Marsh* v. *Whitmore*, 21 Wall. 178, 185; *Godden* v. *Kimmell*, 99 U. S. 201; *Badger* v. *Badger*, 2 Wall. 87, 95; *Wood* v. *Carpenter*, 101 U. S. 135; *Lansdale* v. *Smith*, 106 U. S. 391; *Fisher* v. *Boody*, 1 Curtis, 206, 219; *Prevost* v. *Gratz*, 6 Wheat. 481; *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Piatt* v. *Vattier*, 9 Pet. 405, 416; *Stearns* v. *Paige*, 1 Story, 204, 217; *Wagner* v. *Baird*, 7 How. 234; *Hough* v. *Richardson*, 3 Story, 659.

*Mr. W. Hallett Phillips*, and *Mr. Benj. Morgan* for appellee, cited to the same points: *Allone* v. *Jewell*, 94 U. S. 506, 512; *Insurance Co.* v. *Eldridge*, 102 U. S. 545, 547.

Mr. Justice Gray delivered the opinion of the court.

The question upon which the decision of this case turns is one of fact ; and upon full consideration of the evidence, we are unable to adopt the conclusion of the Circuit Court.

Hays and wife and DeWolf and wife, connections by marriage and intimate friends, took up their residence in California in 1871. Hays was in ill health, and DeWolf had the confidence of Hays and wife and often transacted business for them. In 1872, DeWolf and wife owned a ranch of 4160 acres in Fresno County, California, and at his suggestion Mrs. Hays purchased an undivided half of the tract for the price of $23,425, part of which she paid out of her separate funds, and for the rest of which she gave them her promissory note for $10,135, secured by mortgage of the land.

It is alleged in the bill, and shown by the evidence, that afterwards DeWolf and wife, without consideration, assigned the note and mortgage to one Haggin, and he commenced an action of foreclosure, which was dismissed upon the plaintiff's executing and delivering to Haggin a deed of the land ; that in 1877 the same was conveyed, without consideration, by Haggin to one Dimmock, and by him to Mrs. DeWolf ; and that in all these transactions Haggin, as well as Dimmock, acted as agent of the DeWolfs.

The bill alleges, and the answers deny, that the plaintiff executed and delivered the deed to Haggin " at the urgent solicitation oɪ her husband, who was at the time an invalid, unable to attend to business, and who importuned the plaintiff to make said deed, urging as a reason that he was unwilling to die and leave her involved in a litigation which might result in her pecuniary ruin, and the plaintiff, yielding to his entreaties and persuasions, consented to and did make said deed ; " and that DeWolf and wife, at the time of the execution of that deed, " well knew that the same was made by the plaintiff under the influence of her said husband and because of his persuasion and solicitation, and was not her free and voluntary act."

In March, 1884, DeWolf and wife conveyed the land to

Barnes. The bill alleges that this conveyance was made "for the purpose of covering up and concealing their title to the same, the better to cheat and defraud the plaintiff." The answers deny that it was made with that or any other fraudulent or wrongful purpose.

It appears by the evidence that, at and before the time of the making of the deed to Haggin, Mrs. Hays and her husband had very little other property, while Haggin and De-Wolf were wealthy; and that her husband was very ill of consumption complicated with other diseases (of which he died a year afterwards) and was, as his attending physician testified, "extremely nervous and sensitive, and easily affected by almost everything surrounding him," and less fit to transact business than he had previously been. Mrs. Hays testifies that she was induced to make the deed by the persuasions and entreaties of her husband, who was greatly worried by the fear of leaving her without means in a network of legal trouble.

But the other circumstances, preceding and attending the execution of the deed, which are clearly established by the evidence, give a different color to the matter.

In May, 1876, Mrs. Hays brought an action in a court of the State against DeWolf and wife, alleging that she had been induced to make her original purchase by their fraudulent representations as to the value of the property, and demanding damages for the fraud, as well as that the note and mortgage might be declared void. Haggin's action to forclose the mortgage was brought in November, 1876.

Mr. Rearden, a counsellor at law, whose integrity and veracity are not impugned, and who had long been acquainted with Hays and wife and their affairs, and was one of her counsel, testifies that while those two suits were pending the question of a compromise and settlement was discussed between himself and the opposing counsel, by which of them first suggested he did not remember; that he had conversations on the subject at his office in San Francisco with Hays alone, and afterwards with him in the presence of his wife at their residence in Redwood; that "they stated a number

of facts which, if proved, might possibly be defences to the note and mortgage;" that the reasons Hays gave him for wanting to settle the matter were that "they were practically without means to carry on any extensive litigation, which seemed to be opening up, and his health was bad, and he did not want to risk his labor and time on the great uncertainties of this business;" and that he carefully suggested to Hays various items of the possible expenses of the litigation, and, among other things, that one of the pending suits "would possibly cost him all the way from $1500 to $2500."

It was after Hays had talked with Rearden, that, as Mrs. Hays testifies, he entreated her and she consented "to wipe out the whole thing, the DeWolf suit and the Haggin suit and everything, if they could just get out of it, and not continue in it at all."

Mrs. Hays further testifies that, at Rearden's request, she went without her husband to San Francisco "to see the De-Wolfs in relation to this matter of the deed and the suit," and negotiations were had at Rearden's office between Mrs. Hays and Rearden on the one side and DeWolf and his counsel on the other, lasting a great part of two days, before a settlement was effected. The only evidence of any knowledge on the part of the defendants that Mrs. Hays was acting under the influence of her husband is her testimony that she then told DeWolf "that she wanted to wipe out the whole thing on account of her husband's ill health, and that she did it because it was a wife's duty, in other words, to do what he told her to do."

The terms of the settlement, as then agreed upon and some days afterwards carried out, were that the mortgage note was delivered up to Mrs. Hays, two debts of hers of about $1200 were paid by DeWolf, and Hays and wife executed the deed conveying the land to Haggin, and a deed of release of all claims against the DeWolfs. These deeds were dated January 16, 1877; and annexed to each of them was a certificate of a notary public to its acknowledgment by Hays and wife, and that she, upon being examined apart from her husband, and made acquainted with its contents, acknowledged her execution and did not wish to retract it.

The plaintiff, in her present bill, filed in 1884, does not allege any fraud or undue influence in the original transaction in 1872, by which she purchased the property and gave the note and mortgage for part of the price; but, on the contrary, claims title under that purchase, and offers to pay the amount of the mortgage note and interest, deducting any rents and profits received by the defendants. The uncontradicted testimony of well informed witnesses proves that at the time of the settlement in 1877 the value of the undivided half of the land did not exceed the amount of the mortgage, although it has since greatly increased because of the introduction of irrigation. In the state of facts then existing, the settlement appears to have been a prudent and fair one, made deliberately and under advice of competent counsel. Independently of any question of laches, therefore, no ground is shown for maintaining this suit.

*Decree reversed, and case remanded to the Circuit Court, with directions to dismiss the bill.*